UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**BRANDON ARDLEY,**

    *Plaintiff,*

    *v.*

**CLARITY SERVICES, INC.,**

    *Defendant.*

Case No.: 8:26-cv-2170

**JURY TRIAL DEMANDED**

## COMPLAINT AND JURY TRIAL DEMAND

COMES NOW the Plaintiff, Brandon Ardley ("Mr. Ardley"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendant, Clarity Services, Inc. ("Clarity" or "Defendant"), stating as follows:

## PRELIMINARY STATEMENT

1. This is an action for damages brought by Mr. Ardley ageainst the Defendant for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA").

## JURISDICTION AND VENUE

2. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which provides that an action to enforce any liability created under the FCRA may be brought in any appropriate United States district court without regard to the amount in controversy.

3. This Court has personal jurisdiction over the Defendant because the Defendant regularly conducts business in the State of Florida and within this District,

Page **1** of **25**

and because the acts giving rise to this action occurred within this District.

4. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Mr. Ardley's claims occurred in this District, where Mr. Ardley resides and received his consumer report disclosures at issue.

## PARTIES

### Mr. Ardley

5. Mr. Ardley is a natural person residing in Tampa, Hillsborough County, Florida.

6. Mr. Ardley is a Consumer as defined by the FCRA, 15 U.S.C. § 1681a(c).

### Clarity

7. Clarity is a Delaware corporation, with a principal business address at 475 Anton Boulevard, Costa Mesa, CA 92626.

8. Clarity is registered to conduct business in the State of Florida, where its Registered Agent is CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324.

9. Clarity is a Consumer Reporting Agency ("CRA") within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that it, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and uses various means of

interstate commerce for the purpose of preparing or furnishing consumer reports, specifically including mail and telephone communications.

## FACTUAL ALLEGATIONS

### Clarity Mixes Mr. Ardley's Credit File with an Unrelated Person

10. Around November 13, 2024, Clarity began maintaining a credit file on Mr. Ardley.

11. At some point after it began maintaining a file on Mr. Ardley, Clarity started incorporating credit information belonging to a separate, unrelated consumer into his file.

12. Clarity falsely associated information apparently belonging to an unrelated individual named "Donald Franklin" into Mr. Ardley's credit file.

13. In total, Clarity incorporated each of the following into Mr. Ardley's file, each of which likely belongs to Donald Franklin:

    a. The name Donald Franklin;

    b. Credit Inquiry to Snap Finance;

    c. Date of birth in 1969;

    d. Address in Pearson, GA;

    e. Cell phone number ending 1863;

    f. An email beginning R. Switzer…;

    g. Net monthly income of $1,712.00; and,

    h. Credit inquiry to American First Finance.

14. "Donald Franklin" bears a surname entirely different from Mr. Ardley's and is associated with a different Social Security number, date of birth, and address.

15. Clarity's file on Mr. Ardley is an example of a mixed file.

16. A mixed file is a credit file that contains information concerning two or more persons rather than the one person about whom it should relate.

17. Clarity caters its consumer reports to subprime lenders, many of whom utilize the personal identifying information maintained by Clarity to verify the identity of credit applicants.

18. Clarity's inclusion of credit information and personally identifying information belonging to another consumer has a severe, negative effect on Mr. Ardley's ability to obtain credit, and exposes his confidential information to third parties who never requested a report on him.

19. Clarity has bene sued by dozens of consumers for mixing their credit files, and thus knows that its automated systems often erroneously match tradeline and identifying information to an incorrect consumer's credit file based on minimal commonalities.

20. Despite such knowledge, Clarity has declined to correct its systems.

### Clarity Sells Mr. Ardley's Report Without Permissible Purpose

21. Clarity, a CRA, has a legal obligation to furnish consumer reports only to those with a permissible purpose to obtain them. 15 U.S.C. § 1681b.

22.    Despite that obligation, Clarity sold consumer reports regarding Mr. Ardley on at least two separate occasions in response to requests submitted under the name of "Donald Franklin."

23.    On December 3, 2025, Clarity sold a consumer report regarding Mr. Ardley to "Snap Finance RTO PQ (2)" in response to a prequalification request submitted in the name of "Donald Franklin" – a request associated with a different Social Security number, date of birth, address, and other identifying information than Mr. Ardley's.

24.    Clarity did the same again on December 3, 2025, selling a report containing Mr. Ardley's private, legally-protected information to "AmericanFirstFinance-Lease" in response to a separate rent-to-own application in the name of "Donald Franklin," once more keyed by a common tracking number to that individual's information rather than Mr. Ardley's.

25.    Clarity had no reason to believe it had a permissible purpose to furnish a report on Mr. Ardley to these lenders, which had requested a report concerning an unrelated individual, not Mr. Ardley.

26.    There are no meaningful commonalities between Mr. Ardley and "Donald Franklin" that could have justified Clarity's decision to treat a request for one as a request for the other.

27.    Each unauthorized disclosure of Mr. Ardley's private financial information to a stranger to his transactions was itself a concrete injury to Mr. Ardley, independent of any downstream credit consequence.

**Additional Inaccuracies in Clarity's Reporting Regarding Mr. Ardley**

28.    Clarity, a CRA that predominantly serves the needs of online lenders making short-term loans, programs its systems to acquire and report as much information as possible, with little regard to the quality or accuracy of the data.

29.    On or about July 14, 2026, Mr. Ardley requested and obtained a copy of his consumer disclosure from Clarity.

30.    Mr. Ardley's review of the disclosure revealed that Clarity was reporting inaccurate, contradictory, and misleading information, as detailed below.

**Clarity Reports Multiple Inaccurate Driver's License Numbers**

31.    Clarity's credit file on Mr. Ardley contains three separate driver's license entries – which is itself impossible, as Florida law permits a person to hold only one driver's license at a time.

32.    Several additional driver's license entries are the wrong length: "XXXXXXXXXXX76DD" (15 characters) and "XXXXXXXXXXX3790" (15 characters).

33.    A valid Florida driver's license number is exactly 13 alphanumeric characters.

34.    These license entries had no chance of being accurate. The defect is evident from the entries themselves, without reference to any outside information, and the data is virtually assured to be false.

35.    Reasonable procedures designed to assure maximum possible accuracy of consumer reports would have flagged and rejected these entries rather than

incorporating and selling them.

36. Lenders rely on driver's license data to confirm a consumer's identity; the presence of impossible license data in Mr. Ardley's file creates the false impression that his identity cannot be confirmed, directly damaging his creditworthiness.

**Clarity Improperly Redacted Account Numbers**

37. Clarity's consumer disclosure to Mr. Ardley dated July 14, 2026 included three accounts disclosed to Mr. Ardley with redacted account numbers: two by Possible Finance and one reported by CheckAdvanceUSA.net/Tekambi.

38. The FCRA requires a consumer reporting agency, upon a consumer's request, to "clearly and accurately disclose to the consumer … [a]ll information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1).

39. The statute permits a CRA to truncate a consumer's Social Security number in the disclosure on the consumer's request, 15 U.S.C. § 1681g(a)(1)(A), and separately governs the truncation of credit and debit card numbers on electronically printed receipts, 15 U.S.C. § 1681c(g). Nothing in the FCRA authorizes a consumer reporting agency to redact a tradeline account number in a consumer's file disclosure.

40. Because Clarity has masked the account number, Mr. Ardley cannot determine from the disclosure whether the account Clarity reports is in fact his account, whether the balance, status, and payment history Clarity attributes to that number are accurate, or whether the tradeline belongs to a different consumer altogether.

41.     Clarity's decision to disclose the account only in redacted form is itself the violation: Clarity did not "clearly and accurately disclose" the contents of his file as 15 U.S.C. § 1681g(a)(1) requires.

### Clarity Reports Inaccurate Housing Information

42.     In addition to the information belonging to an unrelated consumer, Clarity incorporated data into Mr. Ardley's file which cannot possibly be accurate.

43.     For example, Clarity reported Mr. Ardley's housing status as "OTHER" from April 10, 2025 through September 23, 2025; and "RENT" from April 5, 2025 through October 14, 2025.

44.     The multiple and contradictory housing statuses Clarity reported for Mr. Ardley cannot all be simultaneously accurate.

45.     Beyond this, the designation "OTHER" is a catch-all category not defined anywhere in Clarity's consumer disclosure, providing no meaningful information to a lender. More importantly, it is false – Mr. Ardley was not living in an "OTHER" housing situation at any point relevant to Clarity's reporting.

46.     Many subprime lenders – the type Clarity services almost exclusively – use housing status to gauge risk, and treat an "OTHER" housing status as less stable than "OWN" or "RENT." That treatment leads to less favorable lending terms, or outright denials of credit, for Mr. Ardley.

47.     Consequently, Clarity's inclusion of inaccurate and conflicting housing status data had a significant negative impact on Mr. Ardley's ability to obtain new credit.

48.    Clarity also frequently misreported Mr. Ardley's length of residential history, often contradicting itself in its own reporting, as the following examples illustrate.

49.    On April 5, 2025 at 9:17:22 PM, Clarity incorporated data reporting Mr. Ardley resided at his address for 12 Months. Just 57 seconds later at 9:18:19 PM, Clarity incorporated data reporting Mr. Ardley had resided at his address for 24 Months. Thus, Clarity's report indicates Mr. Ardley gained 1 year of residential history in just 57 seconds, which is impossible.

50.    Similarly, on April 10, 2025 at 3:26:24 AM, Clarity incorporated data reporting Mr. Ardley resided at his address for 0 Months. Just 30 seconds later at 3:26:54 AM, Clarity incorporated data reporting Mr. Ardley had resided at his address for 72 Months. Thus, Clarity's report indicates Mr. Ardley gained 6 years of residential history in just 30 seconds, which is impossible.

51.    The overlapping and contradictory residential timelines Clarity reported – including Clarity's repeated reports that Mr. Ardley had resided at his current address for "0 Months" – create a facially inaccurate and frankly nonsensical residential history that violates the mandate of 15 U.S.C. § 1681e(b) and creates the negative and false impression that Mr. Ardley has recently moved, has been unhoused, moves residences frequently, or resides at multiple residences simultaneously.

**Clarity Reports Inaccurate Employment History**

52.    Clarity's employment data also contains substantial distortions about Mr. Ardley's employment history.

53. Specifically, from April 5, 2025 through April 10, 2025, Clarity incorporated data indicating that Mr. Ardley's "Months at Employer" were 0 Months, 11 Months, 60 Months, 72 Months, and 120 Months.

54. It is not logically consistent for an employee to simultaneously have these contradictory employment tenures.

55. Less than six months later – in September 2025 – Clarity incorporated data into Mr. Ardley's file indicating he had been with his employer for 240 months, literally 20 years longer than the 0 months Clarity had just reported in April 2025.

56. The multiple timeline impossibilities Clarity incorporated into Mr. Ardley's credit file with respect to his employment tenure are not only patently absurd given their chronological impossibilities, but also create a misleading and unreliable record of Mr. Ardley's employment stability and the damaging impression that Mr. Ardley was either repeatedly unemployed or had a tendency to abruptly switch occupations.

57. Clarity's failure to maintain reasonable data-filtering procedures is further evidenced by its inclusion of multiple fragmented, duplicate, and near-identical variations of the exact same employer name.

58. Within the Employer Name section of Mr. Ardley's report, Clarity incorporated the following variants as if each represented a distinct employer: "TAMPA FIRE RESCUE" and "TAMPAP FIRE RESCUE."

59.   These near-identical spellings refer to a single employer; reporting them as separate entities creates a highly misleading narrative that Mr. Ardley concurrently worked for, or moved between, multiple distinct companies.

60.   A reasonable data-quality procedure would have reconciled these obvious variants of a single employer name into a consistent record.

**Clarity Incorporates Inaccurate Income Information into Mr. Ardley's File**

61.   Clarity's reporting of Mr. Ardley's "Net Monthly Income" contains variations so extreme and statistically improbable that, on their face, the data is virtually assured to be false in substantial part.

62.   Clarity's file contains 11 different income figures for Mr. Ardley, ranging from $1,712 to $8,333 per month, often during overlapping timeframes

63.   From April 6, 2025 to December 3, 2025, Clarity reported that  Mr. Ardley's monthly income was each of the following: $1,712, $1,960, $2,600, $3,500, $3,793, $4,000, $4,600, $4,666, $5,000, and $8,333. These figures span a range of $6,621 per month – a variation so vast that it is statistically impossible for all of them to accurately reflect Mr. Ardley's actual income over an 8-month period.

64.   On April 10, 2025 alone, Clarity simultaneously reported Mr. Ardley's Net Monthly Income as both $3,793 and $4,600. A person can only have one total monthly income at any given moment.

65.   No reasonable procedure designed to assure maximum possible accuracy of consumer reports could have permitted these mutually exclusive figures to be reported as if both were accurate.

66. Clarity's reporting of Mr. Ardley's pay frequency is internally inconsistent.

67. Clarity's file includes a pay frequency of "NOTHING," reported on November 13, 2024.

68. Yet Clarity also reported a Net Monthly Income of $5,475 on November 13, 2024, meaning Mr. Ardley was clearly employed at that time and getting paid.

69. A pay frequency of "NOTHING" was thus facially absurd and impossible, as every employed person receives compensation of some kind.

### Clarity Reports Multiple Dates of Birth

70. A prime example of Clarity's disregard for accuracy is its current reporting of two different dates of birth for Mr. Ardley, each containing a different month, day, and year.

71. A consumer can only have one date of birth; the additional date Clarity has on file is necessarily false and inaccurate.

72. The harm to Mr. Ardley from this reporting is severe. Date of birth is a core identity field, and Clarity's own proprietary credit scoring system – along with the underwriting models of the subprime lenders to whom Clarity sells consumer reports – treats inconsistencies in identity data as a primary red flag for fraud and identity theft.

73. A consumer file showing two different dates of birth is, by design, scored as a high-risk applicant whose identity cannot be reliably established. The result is materially lower credit scores, denials of credit, and credit offered only on substantially

less favorable terms – consequences Mr. Ardley suffered as a direct result of Clarity's reporting of false birth dates that no reasonable procedure designed to assure maximum possible accuracy of consumer reports would have permitted.

**Clarity Fails to Meaningfully Disclose Legally Required Information**

74. As set forth above, on or about July 14, 2026, Mr. Ardley requested a copy of his consumer credit disclosure from Clarity.

75. Upon receipt of Mr. Ardley's request, Clarity was required to disclose all information "clearly and accurately" in the credit file, including the identity of each person who obtained a consumer report within the prior year. *See* 15 U.S.C. § 1681g(a)(3)(A)(ii).

76. The FCRA defines "Identification" as "the name of the person or, if applicable, the trade name (written in full) under which such person conducts business." *See* 15 U.S.C. § 1681g(a)(3)(B)(i).

77. Frequently, Clarity fails to fulfill its legal obligations regarding disclosure of this data, often disclosing what can be fairly called incomprehensible information which virtually no one would comprehend.

78. For example, Clarity's disclosure shows an inquiry made on September 1, 2025 which Clarity identified to Mr. Ardley only as "QB/TLS/MK Analytics/Propel."

79. This single inquiry purports to identify four separate end users – "QB," "TLS," "MK Analytics," "Propel" – bundled together as one entry, with no indication

which of these entities actually requested the report or what their relationship to one another is.

80. The FCRA requires identification of *each* person who obtained a consumer report – not a slash-delimited list of candidates from which the consumer is left to guess.

81. This pattern is not isolated. Clarity's disclosure contains additional inquiries reported in the same opaque, bundled format.

82. On November 9, 2025, Clarity disclosed an inquiry as "CCFLOW/TLS/AF247" – again purporting to identify three separate end users ("CCFLOW," "TLS," "AF247") within a single entry, without naming any one of them as the actual requesting party or providing the full trade name of any.

83. Likewise, Clarity disclosed an inquiry on September 2, 2025 as "QuillBank/SunUp/Provenir," combining three separate entities ("QuillBank," "SunUp," "Provenir") into a single entry without identifying any one of them as the person who obtained Mr. Ardley's consumer report.

84. Clarity disclosed these entities using abbreviations or shortened names that no reasonable consumer would understand, and provided no address, phone number, or other identifying information.

85. Multiple consumers have previously sued Clarity for failing to disclose the names of entities obtaining credit reports as legally required.

86. The failure of a person to provide accurate and truthful information as required by law creates an injury-in-fact, thus creating standing pursuant to Article III.

*See, e.g., Havens Realty Corp. v. Coleman,* 455 U.S. 363 (1982) (holding that alleged injury to a plaintiff's statutorily created right to truthful information was a cognizable injury in and of itself, regardless of whether the plaintiff actually intended to use the information for its primary purpose; therefore "the Art. III requirement of injury in fact [was] satisfied.").

87.    Further, the lack of accurate, full disclosure of who had obtained his credit report caused Mr. Ardley great frustration and emotional distress and made him concerned he was the victim of fraud or identity theft.

88.    Clarity's incomplete disclosure of who accessed Mr. Ardley's credit report and why caused Mr. Ardley significant frustration, stress, and concern.

### Clarity's Lack of Standards Constitute Willful Violations of the FCRA

89.    Clarity operates in stark contrast to its parent company, Experian.

90.    While Experian enforces Metro 2 guidelines – industry standards which contain hundreds of pages of explanation on how to report information, covering almost any conceivable scenario, and which is used by other large CRAs and serves as a lingua franca – Clarity requires no such compliance with Metro 2 guidelines and has no discernible quality-assurance standards.

91.    In place of an industry-standard data-quality framework, Clarity's operative "standard" is to ingest and republish whatever data its furnishers transmit, without applying even rudimentary validity checks.

92.    Clarity's file on Mr. Ardley is the direct product of that approach: it incorporates and sells information that is not merely unverified, but facially impossible

– information that no reasonable data-quality procedure could have permitted to enter a consumer report.

93. The inaccuracies in Mr. Ardley's file are not isolated transcription errors traceable to a single furnisher.

94. They span multiple categories of the data Clarity reports – including consumer identity, date of birth, driver's license information, employer address, housing status, months at address, months at employer, net monthly income, pay frequency, and phone-number information – and they share a common signature: each is the kind of error that a single, elementary validity check would have caught before the data was incorporated into Mr. Ardley's file and sold to creditors.

95. Clarity instead operates a system designed to accept and resell that data as if it were genuine.

96. Clarity is not unaware that this is occurring.

97. Clarity has been the subject of repeated FCRA litigation arising from the same categories of inaccuracy described in this complaint – multiple or facially impossible dates of birth on a single consumer's file, invalid driver's license entries, opaque or bundled inquiry disclosures, contradictory residential and employment histories, the wholesale incorporation of placeholder or impossible data, and the incorporation of facially improbable or commingled identifying information.

98. Despite this notice, Clarity has continued to operate its systems in materially the same way, without implementing the basic validity checks that would have prevented the errors complained of here.

99.     Clarity's decision to forgo the quality controls used by its parent company and by other major consumer reporting agencies, in the face of repeated notice that this decision causes ongoing harm to consumers, constitutes a reckless disregard for the rights of the consumers whose data it sells, including those of Mr. Ardley.

100.    Mr. Ardley has hired the undersigned law firm to represent him in this matter and has assigned the firm his right to fees and costs.

## COUNT I
## CLARITY'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)

101.    Mr. Ardley adopts and incorporates paragraphs 1 through 100 as if fully stated herein.

102.    Clarity willfully violated 15 U.S.C. § 1681e(b) when it failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports sold regarding Mr. Ardley, as Clarity sold consumer reports containing information belonging to another individual, as well as internally-inconsistent and logically-impossible data, such as multiple dates of birth and driver's licenses, and conflicting housing status, months at address, months at employer, net monthly income, and pay frequency.

103.    Clarity has been sued on numerous occasions for very similar situations and knows that it frequently sells reports with erroneous information about consumers.

104.    Clarity's conduct was thus willful or done with a reckless disregard for Mr. Ardley's rights under the FCRA.

105.   As a result of its conduct, Clarity is liable to Mr. Ardley for the greater of Mr. Ardley's actual damages or statutory damages of up to $1,000 for each occurrence, punitive damages, reasonable attorneys' fees, and costs, per 15 U.S.C. § 1681n.

WHEREFORE, Mr. Ardley respectfully requests this Honorable Court enter judgment against Clarity for:

a.   the greater of Mr. Ardley's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.   punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.   reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and

d.   such other relief that this Court deems just and proper.

## COUNT II
## CLARITY'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)
### (Pled in the Alternative to Count I)

106.   Mr. Ardley adopts and incorporates paragraphs 1 through 100 as if fully stated herein, and pleads this count strictly in the alternative.

107.   Clarity owed Mr. Ardley a legal duty to utilize reasonable procedures to assure the maximum possible accuracy of its consumer reports regarding Mr. Ardley.

108.   Clarity breached this duty when it sold reports containing information belonging to another individual, as well as internally-inconsistent and logically-impossible data, such as multiple dates of birth and driver's licenses, and conflicting

housing status, months at address, months at employer, net monthly income, and pay frequency.

109.   Clarity's breach amounts to a negligent violation of 15 U.S.C. § 1681e(b), and Mr. Ardley is entitled to his actual damages, attorneys' fees, and costs, pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Mr. Ardley respectfully requests this Honorable Court enter judgment against Clarity for:

a.   actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.   reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and

c.   such other relief that this Court deems just and proper.

## COUNT III
## CLARITY'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(1)

110.   Mr. Ardley adopts and incorporates paragraphs 1 through 100 as if fully stated herein.

111.   Clarity violated 15 U.S.C. § 1681g(a)(1) when it failed to clearly and accurately disclose all the information it had in its file by providing Mr. Ardley with a redacted version of his Consumer Disclosure.

112.   Clarity has been notified through litigation that its disclosures to consumers fail to properly disclose this information.

113.   Clarity's conduct was thus willful and intentional, or, alternatively, was performed with reckless disregard for its duties under the FCRA.

114. As a result of its conduct, Clarity is liable to Mr. Ardley for the greater of Mr. Ardley's actual damages or statutory damages of up to $1,000 for each occurrence, punitive damages, reasonable attorneys' fees, and costs, per 15 U.S.C. § 1681n.

WHEREFORE, Mr. Ardley respectfully requests this Honorable Court enter judgment against Clarity for:

a.  the greater of Mr. Ardley's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.  punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.  reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and

d.  such other relief that this Court deems just and proper.

## COUNT IV
## CLARITY'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(1)
### (Pled in the Alternative to Count III)

115. Mr. Ardley adopts and incorporates paragraphs 1 through 100 as if fully stated herein, and pleads this count strictly in the alternative.

116. Clarity owed Mr. Ardley a legal duty to accurately disclose all the information in his credit file upon his request.

117. Clarity breached this duty when it provided Mr. Ardley with a redacted version of his Consumer Disclosure.

118.    Clarity's breach amounts to a negligent violation of 15 U.S.C. § 1681g(a)(1), and Mr. Ardley is entitled to his actual damages, attorneys' fees, and costs pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Mr. Ardley respectfully requests this Honorable Court enter judgment against Clarity for:

a.    actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.    reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and

c.    such other relief that this Court deems just and proper.

## COUNT V
## CLARITY'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(3)(A)(ii)

119.    Mr. Ardley adopts and incorporates paragraphs 1 through 100 as if fully stated herein.

120.    Clarity violated 15 U.S.C. § 1681g(a)(3)(A)(ii) when it failed to identify each person, including the end-user, that procured Mr. Ardley's consumer report during the one-year period preceding the date upon which he made the request.

121.    Clarity is aware that its consumer disclosures fail to properly identify end-users via multiple consumer lawsuits.

122.    Clarity's conduct was willful, intentional, and exhibited a reckless disregard for its duties to provide clear and accurate disclosures.

123.    As a consequence, Clarity is liable to Mr. Ardley for the greater of Mr. Ardley's actual damages or statutory damages of up to $1,000 for each occurrence,

punitive damages, and reasonable attorneys' fees and costs, pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Mr. Ardley respectfully requests this Honorable Court enter judgment against Clarity for:

    a.    the greater of Mr. Ardley's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

    b.    punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

    c.    reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and

    d.    such other relief that this Court deems just and proper.

## COUNT VI
## CLARITY'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(3)(A)(ii)
### (Pled in the Alternative to Count V)

124.    Mr. Ardley adopts and incorporates paragraphs 1 through 100 as if fully stated herein, and pleads this count strictly in the alternative.

125.    Clarity owed Mr. Ardley a legal duty to disclose the identity of each user that obtained his consumer report within one year of Mr. Ardley's request.

126.    Clarity breached this duty when it failed to identify each person, including end-users, who procured Mr. Ardley's consumer report.

127.    Clarity's breach amounts to a negligent violation of 15 U.S.C. § 1681g(a)(3)(A)(ii), and Mr. Ardley is entitled to his actual damages, attorneys' fees, and costs pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Mr. Ardley respectfully requests this Honorable Court enter judgment against Clarity for:

a.    actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.    reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and

c.    such other relief that this Court deems just and proper.

## COUNT VII
## WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681b(a)(3)

128.    Mr. Ardley adopts and incorporates paragraphs 1 through 100 as if fully stated herein.

129.    Clarity violated 15 U.S.C. § 1681b(a)(3) when it furnished two consumer reports regarding Mr. Ardley to Snap Finance RTO PQ (2) and AmericanFirstFinance-Lease in response to credit applications submitted in the name of "Donald Franklin" – applications that concerned a different, unrelated individual and not Mr. Ardley.

130.    Clarity had no reason to believe it had a permissible purpose to furnish reports regarding Mr. Ardley.

131.    Clarity knows, through complaints from other consumers, that its automated systems often provide data about unrelated consumers in response to requests for reports by lenders.

132.    Clarity's conduct was willful, intentional, and/or exhibited a reckless disregard for its duties under the FCRA.

WHEREFORE, Mr. Ardley respectfully requests this Honorable Court enter judgment against Clarity for:

a.   the greater of Mr. Ardley's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.   punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.   reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and

d.   such other relief that this Court deems just and proper.

## COUNT VIII
## NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681b(a)(3)
### (Pled in the Alternative to Count VII)

133.   Mr. Ardley adopts and incorporates paragraphs 1 through 100 as if fully stated herein, and pleads this count strictly in the alternative.

134.   Clarity had a legal duty to Mr. Ardley to only sell consumer reports to those persons with a permissible purpose to obtain the reports.

135.   Clarity breached this duty when it furnished two consumer reports regarding Mr. Ardley to Snap Finance RTO PQ (2) and AmericanFirstFinance-Lease in response to requests concerning a different, unrelated individual, and thus without a permissible purpose as to Mr. Ardley.

136.   Clarity's breach entitles Mr. Ardley to his actual damages, reasonable attorneys' fees, and costs.

WHEREFORE, Mr. Ardley respectfully requests this Honorable Court enter judgment against Clarity for:

a.    actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.    reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and

c.    such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted on July 28, 2026, by:

**SERAPH LEGAL, P. A.**

/s/ *Bryan J. Geiger*
Bryan Geiger, Esq.
Florida Bar No.: 119168
BGeiger@seraphlegal.com
Service@seraphlegal.com
3505 E. Frontage Rd., Suite 145
Tampa, FL 33607
Tel: 813-567-1230
Fax: 855-500-0705
*Lead Counsel for Plaintiff*